UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE SACHS,

        Plaintiff,

v.

RICARDO INC. et al.,

        Defendants.

_____/

Case No. 23-cv-10643

HON. MARK A. GOLDSMITH

**OPINION & ORDER
(1) GRANTING ALL PENDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT THAT RAISE STATUTE OF LIMITATIONS ARGUMENTS,[1]
(2) DENYING SACHS'S MOTION FOR EXPEDITED REMAND (Dkt. 49), AND (3) GRANTING HONEYWELL'S MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT (Dkt. 110)**

Over seven years after he withdrew from a U.S. Department of Energy (DOE) competition that he claims was unfair and fraudulent, Plaintiff George Sachs filed this action against approximately 100 Defendants somehow associated with the competition. Asserting federal and state-law claims, he seeks one billion dollars in damages.[2] Before the Court are 17 motions to dismiss or motions for summary judgment filed by various Defendants. Because Sachs's claims are time-barred, the Court grants all pending dispositive motions that raise statute of limitations arguments. The Court also denies Sachs's motion to remand and grants Honeywell International, Inc.'s motion to set aside default.[3]

---

[1] See Motions at Dkts. 17, 20, 21, 22, 31, 41, 54, 55, 66, 67, 68, 69, 74, 75, 79, and 87.

[2] In a "request for an extension of time to respond to follow-on efforts to dismiss plaintiff's complaint," Sachs stated that the case "could grow to become **a trillion dollar 'RICO crime' – the largest in U.S. history.**" Sachs Req. at 2 (Dkt. 140) (emphasis in original).

[3] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).

1

I.  BACKGROUND

The source of Sachs's discontent was his brief participation in the DOE's "Wave Energy Prize" contest, which he characterizes as an "18 month long competition aimed[] at finding new and improved methods for capturing the large amounts of energy in ocean waves." Am. Compl. ¶ 1 (Dkt. 1). The contest, which would culminate in significant awards to winning entrants, began in 2015 and ended in November 2016. See id. ¶ 1; Sachs Aff. at PageID.2842 (Dkt. 136). According to Sachs, the contest was "fraudulently run," Am. Compl. ¶ 2, and the individuals in charge of the contest utilized "fabricated, unsubstantiated, and unscientific methods" for judging the contest, id. ¶ 7, which occurred "behind closed doors," id. ¶ 6.

Before filing this action, Sachs filed an earlier lawsuit in Michigan's Oakland County Circuit Court on November 18, 2019, over three years after the competition had ended. See Compl., Sachs v. Ricardo Inc., 19-178028-CZ (Oakland Cnty., Mich. Cir. Ct., Nov. 18, 2019). That action was dismissed without prejudice in February 2020 for failure to serve the defendants with process. See 2/12/20 Order, Sachs, 19-178028-CZ.

Nearly three years after dismissal of that case, Sachs filed this action in Oakland County Circuit Court on November 17, 2022. See Sachs v. Ricardo Inc., Case No. 22-197345-CZ. He asserted federal claims under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. 1962 (RICO), and state-law claims for fraud, aiding and abetting, gross negligence, breach of contract, breach of implied contract, operation of an illegal lottery, contest rigging, fraudulent misrepresentation, fraudulent concealment, unfair business practices, unfair competition, and unjust enrichment. See Am. Compl.

Five Defendants associated with the DOE (Federal Defendants) removed the action to this Court under to 28 U.S.C. § 1442(a)(1), the statute permitting "federal-officer removal."[4] See Notice of Removal (Dkt. 1). The Federal Defendants also filed a notice of substitution under the Westfall Act, 28 U.S.C. § 2679, following which the Court ordered substitution of the United States as Defendant for all claims except Sachs's RICO claim. See Federal Def. Notice of Substitution (Dkt. 28); 3/31/23 Order (Dkt. 32).[5] Sachs challenged the Federal Defendants' removal by filing a motion to remand the case to state court. See Obj. to Removal and Mot. for Expedited Remand (Dkt. 49).[6]

Following removal, 17 motions to dismiss and motions for summary judgment were filed by various Defendants, almost all of which argue that Sachs's claims should be dismissed because they are time-barred. Because Sachs did not file a response to any of these motions, the Court ordered Sachs to file a response and brief addressing the statute of limitations argument raised in many of the motions. See 10/12/23 Order (Dkt. 131). After Sachs filed a response, see Sachs Resp. on SOL (Dkt. 136), the Court ordered the Defendants to file a joint reply, see 12/27/23 Order (Dkt. 137). A reply was filed jointly by all Defendants who had filed a dipositive motion, as well as numerous other Defendants who had yet to file a motion. See Def. Reply on SOL (Dkt. 138).

---

[4] The five Federal Defendants are (i) Ernest Moniz (former Secretary of Energy); (ii) Alison LaBonte (former Program Manager of Marine and Hydrokinetic Technologies in the Wind and Water Power Technologies Office); (iii) Jose Zayas (former Director of Wind and Water Power Technologies Office); (iv) Pamela Brodie (Contracting Officer assigned to the Wave Energy Prize); and (v) Gary Nowakowski (former Project Management Supervisor for Wind and Water Power Technologies Office). See Federal Def. Resp. to Sachs's Mot. at 3–4 (Dkt. 50).

[5] "The Westfall Act accords federal employees absolute immunity from tort claims arising out of acts undertaken in the course of their official duties, 28 U.S.C. § 2679(b)(1), and empowers the Attorney General to certify that a federal employee sued for wrongful or negligent conduct "was acting within the scope of his office or employment at the time of the incident out of which the claim arose, § 2679(d)(1), (2)." Osborn v. Haley, 549 U.S. 225, 225 (2007).

[6] Two groups of Defendants filed responses to the motion: the Federal Defendants (Dkt. 50) and individual Defendants Wesley Scharmen and Philip Michael (Dkt. 51). Sachs did not file a reply.

The Court begins by explaining that removal was proper and denying Sachs's motion for remand. The Court then analyzes Sachs's claims under their respective statutes of limitations, finding that all of Sachs's claims must be dismissed because they are time-barred. Lastly, the Court considers and grants Honeywell's motion to set aside clerk's entry of default.

## II. ANALYSIS

### A. Removal

Under § 1442, a district court has jurisdiction over a civil action commenced in state court that is "against or directed to . . . any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ." 28 U.S.C. § 1442(a)(1). "To qualify for federal-officer removal under § 1442(a)(1), a federal officer must both raise a colorable federal defense and establish that the suit is <u>for</u> an act under color of office." Abernathy v. Kral, 779 F. App'x 304, 307 (6th Cir. 2019) (punctuation modified, emphasis in original).

Here, the Federal Defendants attached a "Certification of Scope of Employment" to their notice of substitution, signed by the Chief of the Civil Division of the Office of the U.S. Attorney for the Eastern District of Michigan, by virtue of authority originating from the United States Attorney General. See Cert. of Scope of Employment at PageID.169–PageID.170 (Dkt. 28-1). The certification states that all of the Federal Defendants "were acting within the scope of their employment as [] employee[s] of the United States at the time of [the] incident" referred to in the complaint. Id. This certification suffices to show that "the suit is for an act under color of office," as required. Abernathy, 779 F. App'x at 307 (punctuation modified). The Federal Defendants have also satisfied the "colorable federal defense" requirement by invoking immunity under the Westfall Act. See Federal Def. Resp. to Mot. for Remand at 8 (Dkt. 50).

4

Sachs argues that removal is improper because "95% of the defendants were not government employees," and "95% of Co-Defendants did not give consent or receive[] prior notice." Sachs's Mot. at PageID.1282, 1285 (capitalization modified). These arguments fail, however, because the Federal Defendants only need to establish that one Defendant meets the requirements for removal under 28 U.S.C. § 1442. See Bennett v. MIS Corp., 607 F.3d 1076, 1084 n.7 (6th Cir. 2010) ("Section 1442(a)(1) authorizes removal of the entire case even if only one of the controversies it raises involves a federal officer or agency.") (punctuation modified); Howes v. Childers, 426 F. Supp. 358, 359 (E.D. Ky. 1977) ("When a single federal officer timely removes a case to federal court under 28 U.S.C. § 1442(a)(1), the entire case is thereby removed, regardless of whether other defendants, federal officers or not, properly join in the petition for removal.").

Sachs also argues that "Defendants acted outside their scope of employment [and] qualifications" when performing the alleged actions that underlie his claims. See Sachs's Mot. at PageID.1284–1285 (punctuation modified). This argument also fails. "The Attorney General's certification is conclusive unless challenged," and "[w]hen the certification is challenged, it serves as prima facie evidence and shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment." Gutierrez de Martinez v. Drug Enf't Admin., 111 F.3d 1148, 1153 (4th Cir. 1997). "If the plaintiff does not come forward with any evidence, the certification is conclusive. Moreover, the plaintiff's submission must be specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation." Id. at 1155.

In his motion, Sachs argues that "Defendants' normal activities and duties at the DOE did not (and could not) have included designing a competition which they had never before done and which was never a requirement of their employment with the DOE, was never included in their

5

job descriptions, prior duties, were required as qualifications, or specified as desired prior experiences." Sachs's Mot. at PageID.1284. These contentions are "mere conclusory allegations and speculation." Gutierrez de Matinez, 111 F.3d at 1155. Moreover, they are soundly contradicted by the nature of the job responsibilities of the Federal Defendants. As officials within the DOE, their mission includes "ensur[ing] America's security and prosperity by addressing its energy, environmental and nuclear challenges through transformative science and technology solutions." About Us, Dep't of Energy, https://www.energy.gov/about-us (last visited Feb. 7, 2024).[7] Trying to develop new sources of energy through the competition that Sachs challenges fits squarely within that mission. The Attorney General's certification that the Federal Defendants were acting within the scope of their employment was entirely appropriate.

Because removal of this action was proper, the Court denies Sachs's motion for remand.

### B. Statute of Limitations

The Court first discusses the limitations period and accrual principles applicable to Sachs's RICO clam; it then does the same for his state-law claims.

#### 1. RICO Claim

Sachs brings a claim against Defendants under the federal RICO statute, which "prohibits persons from engaging in a pattern of racketeering." Courser v. Allard, 969 F.3d 604, 621 (6th Cir. 2020). RICO claims have a four-year limitations period. See Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156 (1987).

The United States Court of Appeals for the Sixth Circuit applies an injury-discovery rule to RICO claims—meaning that a RICO claim accrues "when [the] plaintiff . . . knew or should

---

[7] The Court can take judicial notice of facts from public records "whose accuracy cannot reasonably be questioned." See Elec. Merch. Sys. LLC v. Gaal, 58 F.4th 877, 883 (6th Cir. 2023) (punctuation modified).

6

have known of [the] injury." Baltrusaitis v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., 86 F.4th 1168, 1177 (6th Cir. 2023) (punctuation modified). Plaintiffs do not need to discover any other elements of their RICO claim, such as a pattern of racketeering activity, for their claim to accrue; discovery of the injury alone suffices. See Rotella, 528 U.S. at 555. ("[I]n applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock.").

Further, "[a] plaintiff need only be aware of 'storm warnings' . . . [they] need not be aware of every minute fact underlying their RICO claims." Sims v. Ohio Cas. Ins. Co., 151 F. App'x 433, 436 (6th Cir. 2005). Courts have found "storm warnings" to exist when plaintiffs had limited reason to suspect an underlying RICO claim. See, e.g., Goff v. Nationwide Mut. Ins. Co., No. 2:18-cv-340, 2019 WL 7604826, at *4 (S.D. Ohio Sept. 30, 2019) (finding "storm warnings" when plaintiffs completed an allegedly fraudulent training program because plaintiffs knew "how much money they invested, how much money they had recouped . . . and whether any representations [d]efendants made during recruitment . . . were true or false" by that time); Weaver v. Nat'l Better Living Ass'n, Inc., No. 4:13-cv-2112, 2014 WL 12614481, at *9 (N.D. Ala. July 3, 2014) (finding "storm warnings" when a plaintiff bringing a RICO claim for an allegedly fraudulent insurance scheme thought she purchased comprehensive health insurance but received an insurance card stating that she had a "Limited Benefit Insurance Plan").

Here, Sachs knew or should have known that he had been injured by the time he withdrew from the contest. Sachs suspected fraud and wrongdoing from the onset of the competition. According to Sachs, the "competition had been designed for the specific purpose of achieving preordained results for the DOE, mainly for the purpose of public relations, publicity and to justify (mostly unsuccessful) research it had already been conducting and funding for many years." Am. Compl. ¶ 255. Even before the contest began, Sachs alleges that "all promotional efforts and

7

claims made by the organizers and administrators of this contest involved deliberately false and misleading statements." Id. ¶ 257. Sachs cites specific problems that plagued the contest from the very beginning, including foreign companies that were allowed to masquerade as American companies and enter the contest against the rules, id. ¶ 235, and certain teams that received "special help and treatment," id. ¶ 237.

These were not problems that Sachs only became aware of after withdrawing from the contest, which, as explained below, happened before August 14, 2015. In fact, Sachs admits that he "certainly became suspicious within [the contest's] very first stages." Id. ¶ 217. Because the contest was announced on May 4, 2015, see Federal Def Mot. to Dismiss at 3 (Dkt. 54), this means Sachs's suspicion was triggered shortly thereafter. According to Sachs, "[r]ealizing that this contest was unfair or rigged, didn't even require an engineering or science degree, just simple common sense." Id. ¶ 220. Sachs contends that "there were simply to [sic] many irregularities and scientific and legal mistakes being made throughout the event, for more people than just [Sachs] to not have been aware of them." Id. ¶ 81. Sachs even "attempted several times to communicate his concerns" to DOE officials and alleges that "those participants who chose to remain in the competition . . . were knowingly complicit in not only the fraud alleged to have been committed, but also its intentional coverup." Id. ¶¶ 80–81. Sachs's suspicions—which he formed early on in the contest—were certainly "storm warnings" of his underlying RICO charge.

The main injury that Sachs alleges is the "complete derailment of [his] technology and business plan," which harmed "the potential future value of [his] potentially revolutionary wave energy technology." See Am. Compl. ¶¶ 291, 296. Sachs knew or should have known of this injury by the time he withdrew from the contest. At that point, there was no remaining chance that

the contest would somehow further his technology and business plan, and Sachs had already expended all the time and money he would dedicate to the contest.[8]

Sachs does not allege the exact date on which he withdrew from the contest, stating only that he withdrew "shortly after registration" because he learned that his concept "would not be allowed to function as designed (with all its components)." See Am. Compl. ¶ 26. The term "registration" may refer to the date by which he had enrolled (April 15, 2015) or the date on which his registration application was accepted (June 30, 2015).[9] In any case, it is undisputed that he had withdrawn by August 14, 2015 at the latest.[10] His RICO claim, therefore, accrued by August 14, 2015, and Sachs had four years, or until August 14, 2019, to file a complaint. Because he did not do so until November 17, 2022, Sachs's RICO claim is time-barred.

### 2. State-Law Claims

As to Sachs's state-law claims, a federal court will apply the choice-of-law rules that the forum state's own courts would apply. See Osborn v. Griffin, 865 F.3d 417, 443 (6th Cir. 2017)

---

[8] Although Sachs argues that his injuries continued into 2017, when contest award money was actually paid out to others, such awards would be, at most, additional damages that he suffered. Because the accrual commences when there are "storm warnings" of damages, it is irrelevant that additional damages take place at a later time. See Sims, 151 F. App'x at 437 (6th Cir. 2005).

[9] See Sandia Def. Mot. to Dismiss (Dkt. 20) at PageID.423; Def. Reply on SOL at PageID.2875.

[10] Multiple Defendants submit that Sachs had withdrawn from the contest before August 14, 2015. See, e.g., Sandia Def. Br. in Supp. Mot. to Dismiss at 2; MIT Def. Br. in Supp. Mot. to Dismiss at 4–5 (Dkt. 21). Defendants Polaris Strategic Communications LLC and Christine Fuentes explain that Sachs failed to submit a required technical submission by the July 15, 2015, deadline, and his "disqualification" was posted publicly on the WEP website on August 14, 2015. See Polaris & Fuentes Br. in Supp. Mot. to Dismiss at 7 (Dkt. 75). Sachs has not contested the August 14, 2015 date. Further, the joint SOL reply filed by many Defendants attaches two relevant exhibits: (i) an email from Sachs dated August 31, 2015, which references his formal withdrawal from the contest, see Def. Reply on SOL at PageID.2875–2876, and (ii) a sworn declaration signed by Julia Zona, owner of JZ Consulting LLC—the company contracted to serve as the WEP administrator—stating that Sachs's team "was ineligible to continue participation in the competition when it failed to make the required technical submission by the July 15, 2015, 5:00pm deadline." See Id. at PageID.2874.

("Federal courts exercising supplemental jurisdiction must apply the forum state's choice of law rules . . . ."). The threshold question then is, which state's law would a Michigan court apply to these claims? Under Michigan choice-of-law rules, courts "apply Michigan law unless a 'rational reason' to do otherwise exists." Sutherland v. Kennington Truck Serv., Ltd., 562 N.W.2d 466, 471 (Mich. 1997).

Sachs argues that because the contest was national, "the laws [and] statutes of all states come into play and must be considered when establishing statute of limitation matters." Sachs Resp. on SOL at PageID.2832. It is unclear which state's law he is urging should be applied, or whether he is arguing that, somehow, the laws of all states should be analyzed. Whatever his position, Sachs offers no legal authority.

The only sensible conclusion is that Michigan law should be applied. Sachs is a Michigan resident, alleges that he was injured while in Michigan, and he filed this action in a Michigan state court. No other state's law would have any logical connection to Sachs's state-law claims. Nor would any other state have an interest in protecting someone who was not a resident of that state. Absent some factor arguing otherwise, the forum state's law governs. See id. ("If no [foreign] state has [an interest in having its law applied], the presumption that Michigan law will apply cannot be overcome."). Sutherland, 562 N.W.2d at 471. Therefore, the source of law for the state-law claims is Michigan law, from which it follows that Michigan statutes of limitation must apply to Sachs's state-law claims.

Some of Sachs's claims are cognizable under Michigan law, and some are not. The table below shows the limitations periods for his cognizable state-law claims.[11]

---

[11] One of Sachs's claims is a claim for aiding and abetting, in support of which he "re-alleges and incorporates by reference" all other allegations in his complaint without further specification as to the basis of his claim. Am. Compl. ¶ 238. Courts considering aiding and abetting claims look to the statutes of limitations that would be applicable to the offenses that the defendants allegedly sought to further through aiding and abetting conduct. See In re NM Holdings Co., LLC, 622 F.3d

10

**Table 1. Statutes of Limitations for Sachs's State-Law Claims**

| Claim | SOL | Legal Authority |
|---|---|---|
| Fraud (Count II) | 6 years | Mich. Comp. L. § 600.5813; Boyle v. Gen. Motors Corp., 661 N.W.2d 557, 560 (Mich. 2003) |
| Gross negligence (Count IV) | 3 years | Mich. Comp. L. § 600.5805(2); Nosse v. City of Ann Arbor, Michigan, No. 22-11283, 2023 WL 2250621, at *11 (E.D. Mich. Feb. 27, 2023) |
| Breach of contract (Count V) | 6 years | Mich. Comp. L. § 600.5807(9); Czewski v. KVH Indus., Inc., 607 F. App'x 478, 480 (6th Cir. 2015) |
| Breach of implied contract (Count VI) | 6 years | Mich. Comp. L. § 600.5807(9); Currithers v. FedEx Ground Package Sys., Inc., No. 04-10055, 2012 WL 458466, at *3 (E.D. Mich. Feb. 13, 2012) |
| Fraudulent misrepresentation (Count IX) | 6 years | Mich. Comp. L. § 600.5813; Cone v. Tessler, 800 F. App'x 405, 409 (6th Cir. 2020) |
| Unfair competition (Count XII) | 3 years | Mich. Comp. L. § 600.5805(2); AWGI, L.L.C. v. Atlas Trucking Co., L.L.C., 381 F. Supp. 3d 832, 852 (E.D. Mich. 2019), on reconsideration, No. 17-12131, 2019 WL 2866093 (E.D. Mich. July 3, 2019) |
| Unjust enrichment (Count XIII) | 6 years | Mich. Comp. L. § 600.5807(9); Romeo Inv. Ltd. v. Michigan Consol. Gas Co., No. 260320, 2007 WL 1264008, at *8 (Mich. Ct. App. May 1, 2007) |

Sachs asserts other state-law claims that are not cognizable: "operation of an illegal lottery" (Count VII), "contest rigging" (Count VIII), "fraudulent concealment" (Count X), and "unfair business practices" (Count XI). Because these are not cognizable claims, no limitations period would be applicable. If these claims were cognizable, the longest limitations period would be six

---

613, 626 (6th Cir. 2010). Therefore, the statute of limitations for any aiding and abetting claim brought by Sachs is the same as the statute of limitations for any other claim the conduct sought to further. The longest period for any claim is six years, meaning that the longest period for an aiding and abetting claim is six years.

11

years under the "catch-all" statute of limitations provision for other personal actions, Mich. Comp. L. § 600.5813. Thus the longest limitations period for any claim—cognizable or not—is six years.

Under Michigan law, "except as otherwise expressly provided, the period of limitations runs from the time the claim accrues." Mich. Comp. L. § 600.5827. The general rule is that "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." Id. Further, the Michigan Supreme Court has held that the common law discovery rule does not apply to claims governed by § 600.5827. Trentadue v. Buckler Lawn Sprinkler, 738 N.W.2d 664, 680 (Mich. 2007).

It is obvious from the face of Sachs's complaint that his state-law claims accrued before he withdrew from the contest on or before August 14, 2015. As discussed above, Sachs alleges that the contest was fraudulently run from the outset, and that Defendants were complicit in this fraud from the beginning. By the time Sachs withdrew from the contest, the wrongs upon which Sachs's state-law claims are based had already allegedly occurred.[12]

Sachs argues that accrual occurred after August 14, 2015, but his statements on precisely when are not clear. In a rambling affidavit, he offers possible accrual dates of (i) November 16, 2016; (ii) the "end of 2018"; and (iii) November 16, 2019. See Sachs Resp. on SOL at PageID.2842. The first date was the "last day" of the contest, which Sachs contends was the last day on which it could have been cancelled. Id. The "end of 2018" was "[t]he earliest date that [Sachs] could have realized any actionable wrongdoing or harms caused to [him] . . . ." Id. The 2019 date is "the earliest [Sachs] did make claims of wrongdoing . . . ." Id.

---

[12] Additional acts may have been wrongful to other participants who remained in the contest. But once Sachs left the contest, any additional acts would not have been wrongful acts as to him. His contention that the payouts of contest awards in 2017 constituted damage to him only highlights that, under Michigan law, accrual is from the date of the wrong, "regardless of the time when damage results." Mich. Comp. L. § 600.5827.

None of these candidates for an accrual date suffices under Michigan law, which fixes accrual when the wrong occurs. Because the contest might have been cancelled as late as November 16, 2016 does not mean that the alleged fraud and other wrongful acts did not precede that date. Nor is the "end of 2018" a date that would satisfy Michigan's accrual rule, because the date on which a plaintiff allegedly realizes he has been harmed has nothing to do with the date when the allegedly wrongful acts took place. And the 2019 date—an apparent reference to the date when Sachs filed his first lawsuit—has no connection to when the wrong was committed. None of these dates can save Sachs's lawsuit from the taint of untimeliness, because Sachs alleges wrongdoings that occurred long before all of the dates on which he relies.

Although he is not explicit, Sachs might be trying to save his lawsuit under theories of tolling. The 2018 date might be a contention that a discovery rule should be applied. See Sachs Resp. on SOL at PageID.2836 ("[Sachs] was not aware that any violations of law or specific crimes that may have been committed until at least several months after the contest had ended and therefore did not have any reason to claim any actionable harm as a result of it, at any time prior."). But as described above, the common law discovery rule does not apply to Sachs's state-law claims. See Trentadue, 738 N.W.2d at 667. All that matters for accrual purposes is when the underlying wrong occurred. Id. And, as discussed above, the alleged wrongs for which Sachs could have brought suit occurred no later than August 14, 2015, the date by which he had withdrawn from the contest.

The invocation of the 2019 date may be a contention that the filing of Sachs's first lawsuit tolled the statute of limitations when it was filed on November 18, 2019.[13] See Am. Compl. at

---

[13] Although Sachs's complaint is not entirely clear, the Court interprets his discussion of the earlier filing as possibly raising a tolling argument. See Am. Compl. at PageID.23. ("The present action includes new and additional parties not included in an earlier temporary filing (2019-178028-CZ) that was dismissed for lack of service on any of the original parties within the original time allowed for service. Therefore, this prior action was never allowed to advance and was dismissed without

PageID.23. As previously discussed, that action was dismissed without prejudice for lack of service. Id. Sachs appears to rely on a Michigan statute that tolls the statutes of limitations for Michigan claims in certain instances, including "[a]t the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules," or "[a]t the time jurisdiction over the defendant is otherwise acquired." Mich. Comp. L. § 600.5856. But § 5856 is no help to Sachs because, by his own admission, he did not timely serve a copy of the summons and the complaint on the defendants, or otherwise acquire jurisdiction. See Am. Compl. at PageID.23. Under the plain text of the provision, "if one does not perform any actions specified by § 5856, the statute of limitations is not tolled and therefore the period of limitations continues to run after the complaint has been filed." Gladych v. New Fam. Homes, Inc., 664 N.W.2d 705, 708 (Mich. 2003).

Sachs briefly mentions the doctrines of equitable tolling, continuing harms, and fraudulent concealment in his response regarding statutes of limitations, but he offers no supporting facts or explanation. See Sachs Resp. on SOL at PageID.2833–2834. Sachs merely quotes case law describing the doctrines. Id. Since courts need not construct arguments that litigants have failed to make, the Court will not do so here. See ECIMOS, LLC v. Nortek Glob. HVAC, LLC, 736 F. App'x 577, 583–584 (6th Cir. 2019) ("[T]his court has consistently declined to review issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.") (punctuation modified).

Because all of Sachs's state-law claims accrued in 2015—more than six years before he filed the present action in state court—they are time-barred.

### C. Honeywell's Motion to Set Aside Clerk's Entry of Default

---

prejudice. The current action is a follow-on of [a] now dismissed action and is independent of the earlier filings. The present claims remain within MI statutes of limitations.").

Honeywell filed a motion to set aside clerk's entry of default entered against it. See Honeywell Mot. (Dkt. 110); 8/23/23 Entry of Default (Dkt. 95). The default was entered at Sachs's request because Honeywell had failed to plead or otherwise defend. See 8/23/23 Entry of Default. Sachs did not respond to Honeywell's motion.

Rule 55(c) states that "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. Pro. 55(c). In determining whether good cause exists, the district court must consider: "(1) whether culpable conduct of the defendant led to the default, (2) whether the defendant has a meritorious defense, and (3) whether the plaintiff will be prejudiced." United States v. $22,050.00 U.S. Currency, 595 F.3d 318, 324 (6th Cir. 2010) (punctuation modified). "In general, our cases discussing motions to set aside default under Rule 55(c) are extremely forgiving to the defaulted party and favor a policy of resolving cases on the merits instead of on the basis of procedural missteps." Id. at 322.

Here, all three factors weigh in favor of setting aside the entry of default. For one, Sachs has not alleged that any culpable conduct of Honeywell led to the default, and Honeywell contends that it did not plead or otherwise reply because it was not properly served. See Honeywell Mot. at 4. With respect the second factor, Honeywell raises a meritorious defense by arguing that Sachs's claims are time-barred. See Id. at 1. And finally, Sachs cannot be legally prejudiced since it appears beyond dispute that the statute of limitations analysis above applies equally to Sachs's claims against Honeywell. The Court grants Honeywell's motion.

### III.   CONCLUSION

For the reasons set forth above, the Court (i) grants all pending motions to dismiss and motions for summary judgment that raise statute of limitations arguments (Dkts. 17, 20, 21, 22,

15

31, 41, 54, 55, 66, 67, 68, 69, 74, 75, 79, and 87), (ii) denies Sachs's motion for expedited remand (Dkt. 49), and (iii) grants Honeywell's motion to set aside clerk's entry of default (Dkt. 110).[14]

It appears that the grounds for granting the pending motions raising the statute of limitations would be applicable to all Defendants, including those who have not filed a motion raising that issue. Sachs has 14 days from the entry of this opinion to file a brief explaining why the case should not be dismissed as to non-moving Defendants, as well. The brief may not exceed 10 pages.

SO ORDERED.

Dated: March 1, 2024  
  Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

---

[14] The Court also denies Sachs's "request for an extension of time to respond to follow-on efforts to dismiss" his complaint (Dkt. 140), which the Court interprets as a request to file a sur-reply brief. The local rules do not provide for any such filing as of right, see E.D. Mich LR 7.1, and Sachs offers no reasonable justification for elongating the briefing in this case.