**NOT RECOMMENDED FOR PUBLICATION**

No. 24-1420

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 10, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| GEORGE SACHS, dba Paradyme Systems USA, ) <br> ) <br> Plaintiff-Appellant, ) <br> ) <br> v. ) <br> ) <br> RICARDO INC., et al., ) <br> ) <br> Defendants-Appellees. ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |

O R D E R

Before: NALBANDIAN, MURPHY, and RITZ, Circuit Judges.

George Sachs, proceeding pro se, appeals the district court's dismissal of his civil action as time-barred. This case has been referred to a panel of the court that, upon examination, unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a). For the reasons set forth below, we affirm the district court's judgment.

On November 17, 2022, Sachs filed a complaint in Michigan's Oakland County Circuit Court, asserting claims arising from his participation in a U.S. Department of Energy (DOE) competition, "Wave Energy Prize," in 2015. He described the contest as "an 18 month long competition aimed[] at finding new and improved methods for capturing the large amounts of energy in ocean waves." Cash prizes were to be awarded to "the top three entries that could achieve *previously unheard of* increases in wave energy capture efficiency and/or comparable cost reductions," but competitors were to bear their own costs for a majority of the contest. In his complaint, Sachs named over 100 individuals and entities as defendants, including the contractors hired to design and administer the competition; DOE officials and employees; universities, consultants, and academics associated with the competition; and other competitors. He alleged

that the competition was "a fraudulently run competition that violated gaming and other laws." According to Sachs, the "defendants used entirely fabricated, unsubstantiated, and unscientific methods for judging" that resulted in errors and allowed for cheating. This was Sachs's second lawsuit arising from his participation in the Wave Energy Prize competition. The first, filed in 2019, was dismissed without prejudice in February 2020 for failure to serve the defendants. *Sachs v. Ricardo Inc.*, No. 2019-178028-CZ (Oakland Cnty. Cir. Ct. Feb. 12, 2020).

In this case, Sachs asserted a federal claim under the Racketeering Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962, and state-law claims for fraud, aiding and abetting, gross negligence, breach of contract, breach of implied contract, operation of an illegal lottery, contest rigging, fraudulent misrepresentation, fraudulent concealment, unfair business practices, unfair competition, and unjust enrichment. He sought $1 billion in damages.

Five of the DOE defendants removed the action to federal district court under 28 U.S.C. § 1442(a)(1), the federal-officer removal statute. Sachs moved to remand the case to state court. Seventeen motions for dismissal or for summary judgment were filed by various groups of defendants, most of which invoked the applicable statutes of limitation. After Sachs failed to respond, the district court ordered him to file a single response addressing timeliness. Once Sachs responded, the defendants filed a joint reply.

The district court denied Sachs's motion to remand and granted the defendants' motions to dismiss, concluding that Sachs's RICO and state-law claims were time-barred. Because it appeared that Sachs's claims against the non-moving defendants were also time-barred, the court gave him 14 days to submit a brief explaining why they should not be dismissed. Sachs filed a brief, but the court found that the brief did not meaningfully address the timeliness issue and sua sponte dismissed Sachs's claims against the non-moving defendants as time-barred. *See Melton v. Blankenship*, No. 08-5346, 2009 WL 87472, at *4 (6th Cir. Jan. 13, 2009).

On appeal, Sachs challenges only the district court's ruling that his claims were untimely.

We review de novo a district court's determination that a claim is barred by the statute of limitations. *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 786

(6th Cir. 2016). A four-year statute of limitations applies to civil RICO claims. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). "The four-year period begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation." *Sims v. Ohio Cas. Ins.*, 151 F. App'x 433, 435 (6th Cir. 2005) (citing *Rotella v. Wood*, 528 U.S. 549, 553-55 (2000)). We have held that, "with regard to a civil RICO claim, 'the running of the statute of limitations begins when a plaintiff is put on inquiry notice—that is, when the plaintiff has been presented with evidence suggesting the possibility of fraud.'" *Isaak v. Trumbull Sav. & Loan Co.*, 169 F.3d 390, 399 (6th Cir. 1999) (quoting *Harner v. Prudential-Bache Sec., Inc.*, Nos. 92-1353, 92-1910, 1994 WL 494871, at *4 (6th Cir. Sept. 8, 1994)). In other words, "the clock begins to tick when a plaintiff senses 'storm warnings,' not when he hears thunder and sees lightning." *Id.* (quoting *Harner*, 1994 WL 494871, at *4).

Here, the district court determined that Sachs's RICO claim accrued—at the latest—when he withdrew from the competition, explaining that his allegations established that he "knew or should have known that he had been injured by the time he withdrew from the contest." Sachs did not allege his exact withdrawal date in his complaint, asserting only that he withdrew his technology from the competition "shortly after registration" when he "learned that it would not be allowed to function as designed." He alleged that the competition organizers "intentional[ly] prevent[ed his] device from being . . . appropriately evaluated in first phase of tank testing (because intentional, unreasonable and unjustifiable limitations were to be imposed on it) that were not part of later stages in the contest." According to the summary-judgment motion filed by defendants Polaris Strategic Communications LLC and Christine Fuentes, Sachs registered his team for the competition on June 29, 2015. Sachs's team failed to submit the required technical submission by the July 15, 2015, deadline, and on August 14, 2015, Sachs's disqualification was publicly posted on the Wave Energy Prize website. Sachs did not dispute this timeline. Indeed, in an August 31, 2015, email sent to defendant Julie Zona, owner of a consulting firm who oversaw and managed the competition, Sachs stated that he formally withdrew from the competition prior to the deadline

for submission of the technical disclosure and asked that the website entry of disqualification be corrected.

Several allegations in the complaint support the district court's finding that Sachs was on notice of the possibility of fraud before he withdrew from the competition on or before August 15, 2015. Sachs alleged that he "became concerned that this was not a normal or legitimate way to run a contest" and that those running the competition were "possibly engaged in a fraudulent enterprise, aimed at benefitting themselves and other organizations and individuals they were already well familiar with . . . more than they were in actually discovering new talent, knowledge or technology." He alleged that the extension of the registration deadline was "the first of many deceptive, misleading, unfair and allegedly fraudulent stages of the event." Sachs further asserted that "[t]he stated technical goals of the contest were also quite ludicrous" because the proposed metrics had never been used before or published for vetting by experts. He alleged that the contest organizers engaged in "false and intentionally deceptive advertising and promotion." Sachs further alleged that the organizers "deliberately made the first stage of tank testing much more difficult for some entries (such as [his]), than for others" and gave "special help and treatment" to certain teams. Sachs's allegation that, during the contest, he "attempted several times to communicate his concerns" to the DOE Secretary and the Inspector General of the DOE further supports a finding that he knew of the possibility of fraud while he was participating in the contest. According to Sachs, any contestant in the semi-finals or finals stage of the contest "must have known that the contest was plagued with serious technical and scientific issues and biases" simply based on "common sense and simple logic." He stated, "[It] is not hard to identify a fair contest from an unfair one and . . . this one should have been recognized as an unfair one from the beginning (since [he] certainly became suspicious within its very first stages)." As the district court found, "Sach's suspicions—which he formed early on in the contest—were certainly 'storm warnings' of his underlying RICO charge."

Sachs described the injury he suffered as a result of the defendants' alleged fraud as "[t]he complete derailment of [his] technology and business plan" and "harm . . . to the potential future

value of [his] potentially revolutionary new wave energy technology." Given his allegation that he was "forced to withdraw from th[e] . . . competition, which could have had huge consequences for the future of [his] technology and allowed its much more rapid commercial introduction," Sachs was aware of his alleged injury at the time of his withdrawal in August 2015. Because he did not file his complaint until November 2022, Sachs's RICO claim is time-barred.

With respect to Sachs's state-law claims, the district court first considered which state's laws should apply. "Federal courts exercising supplemental jurisdiction must apply the forum state's choice of law rules to select the applicable state substantive law." *Osborn v. Griffin*, 865 F.3d 417, 443 (6th Cir. 2017). "Michigan's choice of law rule . . . provides that there is a presumption that Michigan law applies to a case unless there is a rational reason to displace it." *Ruffin-Steinback v. dePasse*, 267 F.3d 457, 463 (6th Cir. 2001). The district court concluded that Michigan law should apply, noting that Sachs is a resident of Michigan; he alleged that he was injured while in Michigan; and he filed this action in a Michigan state court. Sachs maintains that his "claims for damages apply in all 50 states, since the contest was offered in all 50 states" and he "is now suffering [financial harms] in all 50 states." But this conclusory assertion does not provide a rational basis for displacing Michigan law. Sachs does not specify the injuries he has suffered in any state other than Michigan and does not explain why any other state would have an interest in having its law applied.

The district court then considered the limitations period that applied to each of the cognizable state-law claims asserted by Sachs: fraud, gross negligence, breach of contract, breach of implied contract, fraudulent misrepresentation, unfair competition, and unjust enrichment.[1] The statute of limitations for each claim is as follows: six years for fraud and fraudulent misrepresentation, *see* Mich. Comp. Laws § 600.5813; *Boyle v. Gen. Motors Corp.*, 661 N.W.2d 557, 560 (Mich. 2003) (per curiam); *Cone v. Tessler*, 800 F. App'x 405, 409 (6th Cir. 2020); three years for gross negligence and unfair competition, *see* Mich. Comp. Laws § 600.5805(2); *Dixon-*

---

[1] The court noted that Sachs's claims of operation of an illegal lottery, contest rigging, fraudulent concealment, and unfair practices were not cognizable under Michigan law. Sachs does not challenge this aspect of the court's ruling.

*Brown v. Covenant Cemetery Servs.*, No. 355476, 2022 WL 413904, at *3 (Mich. Ct. App. Feb. 10, 2022) (per curiam); *AWGI, L.L.C. v. Atlas Trucking Co., L.L.C.*, 381 F. Supp. 3d 832, 852 (E.D. Mich. 2019); and six years for unjust enrichment, breach of contract, and breach of implied contract, *see* Mich. Comp. Laws § 600.5807(9); *Romeo Inv. Ltd. v. Mich. Consol. Gas Co.*, No. 260320, 2007 WL 1264008, at *8 (Mich. Ct. App. May 1, 2007) (per curiam); *Currithers v. FedEx Ground Package Sys., Inc.*, No. 04-10055, 2012 WL 458466, at *3 (E.D. Mich. Feb. 13, 2012). The general rule in Michigan is that "the period of limitations runs from the time the claim accrues." Mich. Comp. Laws § 600.5827. A claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results." *Id.* The Michigan Supreme Court has held that "the plain language of [§] 600.5827 precludes the use of a broad common-law discovery rule to toll the accrual date of claims to which this statute applies." *Trentadue v. Buckler Lawn Sprinkler*, 738 N.W.2d 664, 680 (Mich. 2007).

Sachs's state-law claims are based on the alleged wrongs committed by the defendants during the course of the Wave Energy Prize competition. And as discussed above, Sachs knew of these alleged wrongs at the time he withdrew from the contest in August 2015. Because he did not file his complaint until November 17, 2022, his claims are time-barred.

Sachs challenges the district court's finding that his claims accrued at the latest when he withdrew from the competition, asserting that his "original and now continuing harms . . . only began ***after the contest ended***." In his complaint, he asserted that his claims "only became legally actionable[] after payment of winnings were officially made," because prior to that the defendants "could have avoided the present action[] by simply cancelling their soon to become *illegal contest* (once payment of taxpayer money was made And in his response to the defendants' motions, Sachs argued, "[O]nly when the payment of taxpayer monies completed an actual fraud[] did [he] understand that he had been harmed in many ways and that these harms were not temporary but permanent and that they would grow exponentially[] over time."

Sachs's argument that he was not injured by the defendants' actions until the prize money was awarded to the winners makes little sense. At that point, Sachs had already withdrawn, so it

is unclear how the payment of prize money could have harmed him. Sachs seems to believe that none of the defendants' alleged acts could be deemed an actionable wrong against him until the competition was complete, because at any point before that the defendants could have corrected the wrongs it had committed by terminating the competition. But that is not what happened. And according to the allegations in his complaint, Sachs was aware of the wrongs from the outset or at least the very early stages of the competition.

Sachs also mentions the continuing-violations doctrine and equitable tolling, but he fails to explain how either of these doctrines renders his claims timely. By failing to present any specific, developed arguments in his brief as to these issues, Sachs has forfeited appellate review of any claim that the district court should have applied these doctrines. *See Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997))); *Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007) (stating that this court will not "identify and address the arguments that [an appellant] could have made but did not").

For these reasons, we **AFFIRM** the district court's judgment.

ENTERED BY ORDER OF THE COURT

Kelly L. Stephens, Clerk

United States Court of Appeals for the Sixth Circuit

**U.S. Mail Notice of Docket Activity**

The following transaction was filed on 06/10/2025.

**Case Name:** George Sachs v. Ricardo Inc., et al
**Case Number:** 24-1420

**Docket Text:**
ORDER filed: We AFFIRM the district court's judgment. Mandate to issue., decision not for publication, pursuant to FRAP 34(a)(2)(C). John B. Nalbandian, Circuit Judge; Eric E. Murphy, Circuit Judge and Kevin G. Ritz, Circuit Judge.

**The following documents(s) are associated with this transaction:**
Document Description: Order

**Notice will be sent to:**

Mr. Mike Morrow
3175 Azelea Drive, S.
Salem, OR 97302

Mr. George Sachs
1845 Woodland Avenue
Sylvan Lake, MI 48320

**A copy of this notice will be issued to:**

Mr. Anthony A. Agosta
Mr. Richard William Arnholt
Ms. Laura C. Baucus
Mr. Gabriel E. Bedoya
Mr. John Adam Behrendt
Mr. Bradley H. Darling
Ms. Rian Dawson
Ms. Josephine A. DeLorenzo
Mr. Joseph Anthony Doerr
Ms. Kinikia D. Essix
Mr. Jonathan B. Frank
Mr. Brian R. Iverson
Mr. Thomas L. Kent
Mr. Donald Joseph Koehler II
Mr. Jeffrey S. Love

Ms. Melissa Benton Moore
Mr. Matthew Reinhardt
Mr. Brian C. Summerfield